AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America | |
| v. | |
| ISAIAH BROWN, and<br>ADOLPH DAINYL BARLEY, | Case No.   2:23-mj-03154-duty |
| Defendants | |

**LODGED**
CLERK, U.S. DISTRICT COURT
6/22/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ____ jb ____ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
June 22, 2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ____ ch ____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.  In or about July 2020 through at least February 2021, in the counties of Ventura and Los Angeles in the Central District of California, the defendants violated:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1349 | Conspiracy to Commit Bank Fraud |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Michael Jia*
*Complainant's signature*

Michael Jia, HSI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   June 22, 2023          _____
*Judge's signature*

City and state:  Los Angeles, California          Hon. Brianna Mircheff, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA: Elizabeth Douglas, x5728

## AFFIDAVIT

I, Michael Jia, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint and arrest warrant against ISAIAH BROWN ("BROWN"), also known as ("aka") "Zayy," aka "FMO Zayy," aka "100KZayy," aka "Datboi22Zayy," and ADOLPH DAINYL BARLEY ("BARLEY"), aka "Dolph," aka "Dolphh," for a violation of Title 18 U.S.C. § 1349 (conspiracy to commit bank fraud).

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

### II. BACKGROUND OF AFFIANT

3.   I am a Special Agent with the U.S. Department of Homeland Security, Office of Inspector General, in Los Angeles, California and have been since August 2018.  I am a law enforcement officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

1

4.    I have successfully completed a fifty-nine-day Criminal Investigator Training Program at the Federal Law Enforcement Training Center, in Glynco, Georgia.  This training included instruction on criminal investigations, investigative information sources and financial analysis.

5.    I have conducted financial analysis of bank/financial account statements and transactions associated to numerous financial fraud investigations.  In addition, I have participated in criminal investigative activities including physical surveillance, digital forensic analysis of digital devices, search warrants, arrests, telephone records analysis, witness interviews, and subject interviews.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

6.    Starting no later than July 2020, defendants BROWN and BARLEY worked together to use 40 or more individuals' personal identifiable information ("PII") to fraudulently obtain California unemployment insurance benefits in victims' names. After causing fraudulent applications for benefits to be submitted to the California Employment Development Department ("EDD") in the victims' names, defendants BROWN and BARLEY coordinated with one another to obtain the EDD debit cards, issued by Bank of America, on which the benefits were loaded. After obtaining the EDD debits cards in victims' names, defendants BROWN and BARLEY then used them at ATMs to withdraw cash and/or otherwise stole the benefits from the EDD debit accounts by transferring the money into defendant BROWN's Bank of America account.

7.   Investigators have identified at least 40 EDD applications that were submitted in names other than defendants BROWN and BARLEY that investigators believe are tied to their scheme.  In total, at least approximately $999,853 in fraudulent benefits was paid out during the scheme.

8.   Based on surveillance footage from Bank of America ATMS, investigators have found images of defendant BROWN, defendant BARLEY, and other co-conspirators conducting ATM cash withdrawals from victim accounts.  Further, investigators have found evidence from bank records and in defendants BROWN's and BARLEY's phones showing that they caused money to be directly transferred from victim accounts into defendant BROWN's Bank of America account.

9.   On October 28, 2020, a California Highway Patrol ("CHP") officer conducted a traffic stop of a white 2020 Lamborghini SUV (the "Lamborghini") driven by defendant BROWN. Following further investigation, the CHP officer determined defendant BROWN was driving without a license and proceed to impound the vehicle.  During an inventory of the vehicle, the CHP officer found a Louis Vuitton bag containing 10 Bank of America EDD debit cards, one Navy Federal Credit Union debit card, and one black Visa debit card -- each with a different name embossed on it and none of which were in defendant BROWN's name -- a pistol, and $56,840 in U.S. currency.

10.  The CHP officer also seized defendant BROWN's phone. On that phone, which was searched pursuant to a search warrant, investigators found substantial evidence related to the fraud

scheme, including text messages between defendants BROWN and BARLEY showing that the two were working together to file fraudulent EDD applications using others' PII and then using the unemployment insurance for their own benefit.  As discussed below, additional evidence shows that defendants BROWN and BARLEY conspired and executed the fraud and identity theft scheme.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

11.  Based on my review of investigative reports and notes, bank statements, EDD records, witness statements, evidence seized from BROWN's and BARLEY's phones, and other evidence, as well as my discussions with other law enforcement officers working on this investigation and my own knowledge of the investigation, I learned the following information:

**A.   The California Unemployment Insurance Program**

12.  The California Employment Development Department ("EDD") administers unemployment insurance ("UI") benefits for residents of California, including Pandemic Unemployment Assistance benefits to individuals who are unemployed because of the COVID-19 pandemic ("pandemic benefits").  To qualify for UI benefits, including pandemic benefits, a California resident has to submit to EDD an application for the benefits, provide EDD with PII (including the applicant's name, date of birth, and social security number), and certify to EDD under the penalties of perjury that the COVID-19 pandemic had directly and adversely affected the applicant's employment.

13.   Applications for UI benefits, including pandemic benefits, can be submitted to EDD online.  An individual who applies online for benefits has to provide EDD with an email address ("account email address") in addition to the applicant's regular mailing address ("account mailing address").  Individuals who are employed, retired, or incarcerated are not eligible for UI benefits, including pandemic benefits.

14.   After a person submits an application for UI benefits online, including pandemic benefits, EDD transmits an email to the account email address provided on the application confirming the submission of the application and, thereafter, sends correspondences related to the application and the UI benefits to the account email address.  Once EDD approves the application and grants UI benefits to the applicant, EDD creates a debit account ("EDD debit account") with Bank of America.[1]  A debit card linked to the EDD debit account will then be mailed to the account mailing address.

15.   EDD then normally deposits UI benefits, including pandemic benefits, to the EDD debit account.  The debit card can be used to withdraw the benefits from the EDD debit account using ATMs, including ATMs that Bank of America operate.  Additionally, a recipient can make direct transfers from an EDD debit account to another bank account.

16.   Once approved for pandemic benefits, the recipient of the benefits is required to periodically recertify under the

---

[1] Bank of America, N.A., is a financial institution insured by the Federal Deposit Insurance Corporation.

penalties of perjury that, among other things, the recipient is unemployed due to the COVID-19 pandemic and therefore remains eligible to receive pandemic benefits.

**B.    Defendants BROWN and BARLEY Conspired to Fraudulently Obtain EDD Funds Held by Bank of America**

17.   Based on my review of investigative reports and notes, bank statements, EDD records, witness statements, evidence seized from BROWN's and BARLEY's phones, and other evidence, as well as my discussions with other law enforcement officers working on this investigation and my own knowledge of the investigation, I learned the following information:

a.    Beginning on an unknown date, but no later than approximately July 2020, and continuing through at least approximately February 2021, evidence gathered during this investigation shows that defendants BROWN and BARLEY worked together and with others, known and unknown, to obtain and use victims' PII to file EDD applications and then collect the EDD money themselves.

b.    Investigators have identified at least 40 EDD applications that were submitted in names other than that of defendants BROWN and BARLEY that investigators believe are tied to this scheme.  In total, EDD paid out approximately $999,853 in benefits to 34 accounts associated with these EDD applications.

18.   Based on my review of investigative reports and notes, bank statements, EDD records, witness statements, evidence seized from BROWN's and BARLEY's phones, and other evidence, as

well as my discussions with other law enforcement officers working on this investigation and my own knowledge of the investigation, defendants BROWN and BARLEY's scheme generally worked as described below:

    1.   <u>Defendants BROWN and BARLEY Exchange PII of Others</u>

19. Based on my review of defendants BROWN's and BARLEY's phone, I know that defendants BROWN and BARLEY used websites on the Darknet to obtain victim PII and then shared it with one another through text messages. Based on EDD records, I know that EDD applications were later submitted in the names of these individuals. For example:

    a.   On or about July 30, 2020, BROWN sent a text message to a phone number saved as "Dolphh" in his contacts.[2] Based on my knowledge of this investigation, I know that "Dolphh" is an alias of BARLEY. In the text message, defendant BROWN sent defendant BARLEY a screenshot that appears to be from a website on the Dark Web showing the purchase of victim E.L.'s PII. Specifically, it shows E.L.'s name, Social Security number, date of birth, physical address, and email address among other details. Based on EDD records, an EDD application was submitted in E.L.'s name on August 2, 2020, and the application contained the Social Security number from this screenshot.

---

[2] Based on my review of defendant BARLEY's phone, I know that defendant BARLEY was the recipient of the messages to "Dolphh." The phone number saved in defendant BROWN's phone as "Dolphh" was the phone number associated with defendant BARLEY's phone.

b.   On or about August 18, 2020, defendant BARLEY sent defendant BROWN a text message containing PII of victim T.D., including his/her date of birth and Social Security number.  The text message also contained an address.  Based on EDD records, an EDD application was submitted in T.D.'s name on August 19, 2020, using the Social Security number and address that defendant BARLEY sent to defendant BROWN.

c.   On or about October 7, 2020, defendant BARLEY texted defendant BROWN and asked him "What's d[] social?"  In response, defendant BROWN sent an image showing the PII of victims D.J., A.I., D.P.-1, and D.P.-2.  Based on EDD records, an EDD application was submitted using the PII of all four individuals in this image; EDD benefits were paid out to three of the four applicants totaling approximately $123,300.

2.   Defendants BROWN and BARLEY Procure Mailing Addresses to Use in Their Scheme

20.  Based on my review of defendants BROWN's and BARLEY's phone, I know that defendants BROWN and BARLEY discussed sending items to various mailing addresses with one another.  Based on EDD records, I know that some of the specific addresses defendants BROWN and BARLEY discussed were provided as the address for an EDD applicant.  For example:

a.   On or about August 5, 2020, defendants BROWN and BARLEY exchanged text messages in which defendant BARLEY provided defendant BROWN a street address in Inglewood, California (the "Inglewood Address").  Defendant BARLEY told

defendant BROWN that that they could use the address "if needed."

b.    The following day, on or about August 6, 2020, defendant BARLEY instructed defendant BROWN via text message to "send two" to the Inglewood Address.  Based on my review of EDD records, I know that the Inglewood Address is the address provided to EDD for EDD applications submitted that same day in the names of victims R.C. and K.M.

c.    On or about September 3, 2022, defendant BROWN sent defendant BARLEY via text message a link to a Twitter posting made by a reporter in Los Angeles.  In the Tweet, the reporter shared a picture of what appears to be numerous letters from EDD on a table.  The reporter's caption indicated he believed this was evidence of potential EDD fraud.  After defendant BROWN sent this link to defendant BARLEY, the two exchanged text messages suggesting, in effect, that defendants BROWN and BARLEY were paying individuals to use those individuals' addresses in the fraudulent EDD applications that defendants BROWN and BARLEY were submitting.  Defendant BARLEY texted:  "It's not even that serious , it's much easier way , just pay people."  Defendant BROWN responded:  "Exactly."

d.    On or about September 4, 2020, defendant BROWN received a text message from an individual he had saved as "TT" in his phone contacts.  "TT" sent defendant BROWN pictures of EDD letters in the names of others, including pictures of letters from EDD addressed to victim C.G.  One of the pictured envelopes sent by "TT" had the word "Urgent" printed in red on

the outside of the envelope.  Defendant BROWN texted "TT" and said: "if it had urgent in red it's card."

        3.    <u>Defendants BROWN and BARLEY Communicate with One Another Regarding EDD Applications and Cards in the Names of Others</u>

21.  Based on my review of defendants BROWN's and BARLEY's phones, I know that defendants BROWN and BARLEY exchanged text messages relating to EDD applications and cards in the names of others.  For example:

        a.    On or about July 30, 2020, defendants BROWN and BARLEY exchanged text messages regarding an EDD application they had submitted in victim D.A.'s name.  Defendant BARLEY informed defendant BROWN that a co-conspirator had received a letter stating that D.A.'s EDD application had been approved.  Defendant BARLEY then sent defendant BROWN via text message a picture of a letter from EDD to D.A.

        b.    On or about August 6, 2020, defendant BARLEY texted an address to defendant BROWN in Rialto, California (the "Rialto Address").  Based on my review of EDD records, I know that the Rialto Address is an address provided to EDD in an EDD application submitted that same day in the name of victim N.B.  On or about August 16, 2020, defendant BARLEY texted defendant BROWN that he was headed to Rialto.  Subsequently, defendant BARLEY texted defendant BROWN a picture of an EDD debit card issued in N.B.'s name.

        c.    On or about August 8, 2020, defendant BARLEY texted an address to defendant BROWN on Century Boulevard in Los Angeles (the "Century Boulevard Address").  Based on my review

of EDD records, I know that the Century Boulevard Address is an address provided to EDD in an EDD application submitted victim J.O.'s name.

d.    On or about August 19, 2020, defendants BROWN and BARLEY exchanged text messages in which defendant BROWN indicated that an EDD debit card in the name of victim J.O. was on its way to the Century Boulevard Address.  In response, defendant BARLEY texted:  "Boom."  Defendant BROWN then texted a picture of himself holding what appears to be a large stack of cash up to his face and making an obscene gesture.

### 4.    Defendants BROWN and BARLEY Steal Money from the EDD Debit Accounts

22.  Based on my review of defendants BROWN's and BARLEY's phones, bank records, EDD records, witness statements, and my own knowledge of the investigation, I know that defendants BROWN and BARLEY obtained EDD benefits from EDD debit accounts in the names of victims.  These victims did not allow defendant BROWN, defendant BARLEY, or anyone else to use their PII to apply for EDD on their behalf.  For example:

        a.    *Victim C.G.*

a.    Based on my review of EDD records, I know that an EDD application in the name of victim C.G. was submitted and approved to receive benefits.  In that EDD application, the email address c[…]g[…]52@gmail.com was provided to EDD.[3]  In total, EDD paid approximately $35,250 in EDD benefits to the account in victim C.G.'s name.

---

[3] The full email address provided to EDD contains victim C.G.'s full name, so I have abbreviated it herein.

      b.   Based on my review of Bank of America records, I know that an EDD debit card issued in the name of victim C.G. was used twice on September 24, 2020, in short succession to withdraw in total $1,000 in cash from a Bank of America ATM in Thousand Oaks, California.  Based on my comparison of surveillance footage from those withdrawals with pictures of defendant BROWN, I believe that defendant BROWN was the individual who made those withdrawals.  Further, in the surveillance footage defendant BROWN was driving a white car resembling the Lamborghini he was driving on October 28, 2020.

      c.   Additionally, as discussed below, on October 28, 2020, BROWN possessed an EDD debit card in victim C.G.'s name.

      d.   Based on my review of Bank of America records, I also know that eight direct transfers were made from the EDD debit account in victim C.G.'s name to defendant BROWN's Bank of America account between October 13, 2020, and January 25, 2021, totaling approximately $9,518.

      e.   Based on my review of Bank of America records and defendant BROWN's phone, I believe that defendant BROWN or defendant BARLEY initiated or caused to be initiated these direct transfers from the EDD debit account in victim C.G.'s name to his own bank account:

      i.   On or about September 10, 2020, Bank of America records indicate that the EDD debit card in victim C.G.'s name was activated.  On that same day, Bank of America records indicate that the profile associated with the EDD debit account was updated.

ii.  On or about September 13, 2020, Bank of America records indicate that a one-time password required for a user to sign into the online account associated with the EDD debit account in victim C.G.'s name was sent to Jruedavis2020@gmail.com.

iii. Based on my review of defendant BROWN's phone, I believe he accessed the email Jruedavis2020@gmail.com on his phone.  Based on my training, experience, and knowledge of this investigation, I believe that defendant BROWN or a co-conspirator changed the email address associated with the online account for the EDD debit account in victim C.G.'s name from c[…]g[…]52@gmail.com to an email address accessible by defendant BROWN, namely Jruedavis2020@gmail.com.

iv.  On or about October 10, 2020, Bank of America records indicate that a user signed into the online account for the EDD debit account in victim C.G.'s name.  The one-time password required for sign in was sent to Jruedavis2020@gmail.com.  The user then set up one-time transfer of $2,468 to a bank account ending in -0412.

v.  On or about October 13, 2020, Bank of America records indicate that a direct deposit of $2,468 was made from the EDD debit account in victim C.G.'s name to defendant BROWN's Bank of America account, which ends in -0412.

f.  On or about November 31, 2021, a CHP officer interviewed victim C.G. telephonically.  Based on the report of that interview, I know that victim C.G. said s/he had not filed for EDD benefits, nor did s/he allow anyone else to use his/her

PII to file for EDD benefits.  Further, victim C.G. did not live in California and had never lived in California at the time of the interview.

> b.   Victim P.G.

a.   Based on my review of EDD records, I know that an EDD application in the name of victim P.G. was submitted and approved to receive benefits.  In that EDD application, the email address p[…]g[…]2020@gmail.com was provided to EDD.[4]  In total, EDD paid approximately $31,800 in EDD benefits to the account in victim P.G.'s name.

b.   Based on my review of Bank of America records, I know that eight direct transfers were made from the EDD debit account in victim P.G.'s name to defendant BROWN's Bank of America account between September 14, 2020, and December 21, 2020, totaling approximately $12,783.

c.   Based on my review of Bank of America records and defendant BROWN's phone, I believe that defendant BROWN or defendant BARLEY initiated or caused to be initiated these direct transfers from the EDD debit account in victim P.G.'s name to his own bank account:

i.   On or about September 10, 2020, Bank of America records indicate that the EDD debit card in victim P.G.'s name was activated.  On that same day, Bank of America records indicate that the profile associated with the EDD debit account was updated.

---

[4] The full email address provided to EDD contains victim P.G.'s full name, so I have abbreviated it herein.

ii.  On or about September 13, 2020, Bank of America records indicate that a one-time password required for a user to sign into the online account associated with the EDD debit account in victim P.G.'s name was sent to p[…]g[…]803@gmail.com.[5]

iii. Based on my review of defendant BROWN's phone, I know that, based on his web history, he accessed the online email inbox for p[…]g[…]803@gmail.com.  Based on my training, experience, and knowledge of this investigation, I believe that defendant BROWN or a co-conspirator changed the email address associated with the online account for the EDD debit account in victim P.G.'s name from p[…]g[…]2020@gmail.com to an email address accessible by defendant BROWN, namely p[…]g[…]803@gmail.com.

iv.  On or about September 13, 2020, after a one-time password was sent to p[…]g[…]803@gmail.com, Bank of America records indicate that a user signed into the online account for the EDD debit account in victim P.G.'s name.  The user then set up one-time transfer of $5,000 to a bank account ending in -0412.

v.   On or about September 14, 2020, Bank of America records indicate that a direct deposit of $5,000 was made from the EDD debit account in victim P.G.'s name to defendant BROWN's Bank of America account, which ends in -0412.

---

[5] The full email address in the Bank of America records contains victim P.G.'s full name, so I have abbreviated it herein.

d.    Additionally, as discussed below, on October 28, 2020, defendant BROWN possessed an EDD debit card in victim P.G.'s name.

e.    On or about June 12, 2023, HSI Christopher Lee and I interviewed victim P.G. telephonically.  During that interview, victim P.G. informed me that s/he had not filled for EDD benefits, nor had s/he allowed anyone else to use his/her PII to file for EDD benefits.  Victim P.G. said s/he never used the email address of p[…]g[…]2020@gmail.com.  Further, victim P.G. did not live in California and had never lived in California at the time of the interview.

c.    Victim K.M.

a.    Based on my review of EDD records, I know that an EDD application in the name of victim K.M. was submitted and approved to receive benefits.  In that EDD application, the email address gaberasool21@gmail.com was provided to EDD.  In total, EDD paid approximately $31,800 in EDD benefits to the account in victim K.M.'s name.

b.    On or about August 11, 2020, defendant BARLEY sent defendant BROWN a text containing a picture of an EDD debit card in the name of victim K.M.  Defendant BARLEY subsequently sent defendant BROWN a text containing a screenshot of an email confirming that the victim K.M.'s EDD debit card had been enrolled in Apple Pay.  In response, defendants BARLEY and BARLEY exchanged the following text messages:

**BROWN**    6500 left on K[.] for me
             Or want me to cash app u this 1000 from K[.]

**BARLEY**   Send it

Or just deposit the 5k

c.    Based on my review of Bank of America records, I know that five direct transfers were made from victim K.M.'s EDD debit account to defendant BROWN's Bank of America account between approximately August 25, 2020, and November 18, 2020, totaling approximately $7,351.

d.    Based on my review of Bank of America records and BARLEY's phone, I believe that defendant BROWN or BARLEY initiated or caused to be initiated these direct transfers from the EDD debit account in victim K.M.'s name to defendant BROWN's bank account:

i.    On or about August 11, 2020, Bank of America records indicate that the EDD debit card in victim K.M.'s name was activated.  Bank of America records indicate that the profile associated with the EDD debit account was updated that same day.  Subsequently, a one-time password required for a user to sign into the online account for the EDD debit account in victim K.M.'s name was sent to gaberaspol21@gmail.com.  It appears that there was a problem with this one-time password because the user signed into the account again and updated it for the second time.  Subsequently, a one-time password was sent to gaberasool21@gmail.com.

ii.    Based on my review of defendant BARLEY's phone, I believe defendant BARLEY had access to the email gaberasool21@gmail.com on his phone.  Based on my training, experience, and knowledge of this investigation, I believe that

17

defendant BARLEY or a co-conspirator originally changed the email address associated with the online account associated with the EDD debit account in victim K.M.'s name to gaberaspol21@gmail.com, but subsequently changed it to gaberasool21@gmail.com, which was an email address accessible by defendant BARLEY.

       iii. On or about August 25, 2020, Bank of America records indicate that a user signed into the online account for the EDD debit account in victim K.M.'s name.  The one-time password required for sign-in was sent to gaberasool21@gmail.com.   The user then set up one-time transfer of $1,770 to a bank ending in -0412.

       iv.  On or about August 25, 2020, Bank of America records indicate that a direct deposit of $1,770 was made from the EDD debit account in victim K.M.'s name to defendant BROWN's Bank of America account, which ends in -0412.

    e.   On or about October 19, 2021, a CHP officer interviewed victim K.M. telephonically.  Based on the report of that interview, I know that victim K.M. said s/he had not filed for EDD benefits, nor did he allow anyone else to use his/her PII to file for EDD benefits.  Further, victim K.M. did not live in California, had never lived in California at the time of the interview, and victim K.M.'s mailing address was not the Inglewood Address.

    f.   On or about June 12, 2023, Agent Lee and I conducted a telephonic interview of victim K.M.  In that

interview, victim K.M. informed me that s/he had never used the email address gaberaspol21@gmail.com.

        *d.*   *Victim A.S.*

     a.   Based on my review of EDD records, I know that an EDD application in the name of victim A.S. was submitted and approved to receive benefits.  In that EDD application, the email address a[…]s[…]2022@gmail.com was provided to EDD.[6]  In total, EDD paid approximately $27,300 in EDD benefits to the account in victim A.S.'s name.

     b.   Based on my review of Bank of America records, I know that four direct transfers were made from the EDD debit account in victim A.S.'s name to defendant BROWN's Bank of America account between August 31, 2020, and October 5, 2020, totaling approximately $15,015.

     c.   Based on my review of Bank of America records and BROWN's phone, I believe that defendant BROWN or defendant BARLEY initiated or caused to be initiated these direct transfers from the EDD debit account in victim A.S.'s name to his own bank account:

     i.   On or about August 31, 2020, Bank of America records indicate that the EDD debit card in victim A.S.'s name was activated.  That same day, Bank of America records indicate that the profile associated with the EDD debit account was updated.  Subsequently, a one-time password required for a user

---

     [6] The full email address provided to EDD contains A.S.'s full name, so I have abbreviated it herein.

to sign into the online account associated with the EDD debit account in victim A.S.'s name was sent to getit2jrice@gmail.com.

ii.  Based on my review of defendant BROWN's phone, I believe he had access to the email getit2jrice@gmail.com on his phone.  Based on my training, experience, and knowledge of this investigation, I believe that defendant BROWN or a co-conspirator changed the email address associated with the online account associated with the EDD debit account in victim A.S.'s name from a[…]s[…]2022@gmail.com to an email address controlled by defendant BROWN, namely getit2jrice@gmail.com.

iii. On or about August 31, 2020, Bank of America records indicate that a user signed into the online account associated with the EDD debit account in victim A.S.'s name. The one-time password required for sign-in was sent to getit2jrice@gmail.com.  The user then set up one-time transfer of $5,000 to a bank account ending in -0412.

iv.  On or about August 31, 2020, Bank of America records indicate that a direct deposit of $5,000 was made from the EDD debit account in victim A.S.'s name to defendant BROWN's Bank of America account, which ends in -0412.

d.  Additionally, as discussed below, on October 28, 2020, defendant BROWN possessed an EDD debit card in victim A.S.'s name.

e.  On or about October 15, 2021, CHP officers conducted a telephonic interview of victim A.S.  Based on the report of that interview, I know that victim A.S. said s/he had

20

not filed for EDD benefits, nor did s/he allow anyone else to use his/her PII to file for EDD benefits.  Further, victim A.S. did not live in California and had never lived in California at the time of the interview.

     5.   <u>BROWN and BARLEY Maintain a List of Victims</u>

    23.  Based on my review of BROWN's phone, I know that in the Notes application on his phone, BROWN possessed a list of victims' names and email addresses associated with victims. Some of the entries in this list include the notation "paid" and an amount.  A portion of this list, which is depicted below, also shows the notation "Me and dolph" -- an apparent reference to BARLEY -- above some of the entries:



    24.  Based on my review of EDD records, I know that the names contained in this list correspond with EDD applications and that some of the other notations in this list correspond with the addresses provided to EDD in those applications.  For example:

       a.   In the list, there is the email address c[…]g[…]52@gmail.com, which, as described above, was the email address provided in the EDD application in victim C.G.'s name.

In the same entry as this email are the notations "elmhurst" and "paid." Based on my review of EDD records, I know that the address provided in the EDD application submitted in the name of victim C.G. was Elmhurst Street in Ventura, California.

b. In the list, there is the email address p[…]g[…]2020@gmail.com, which, as described above, was the email address provided in the EDD application in victim P.G.'s name. In the same entry as this email are the notations "Scandia" and "paud." Based on my review of EDD records, I know that the address provided in the EDD application submitted in the name of victim P.G. was Scandia Avenue in Ventura, California.

c. Victim K.M.'s full name is also included in this list. In the same entry as victim K.M.'s name, is the email address gaberaspol21@gmail.com which, as described above, was the email address that received the one-time password for the online account associated with the EDD debit account in victim K.M.'s name. Also included in the same entry as victim K.M.'s name are the notations "paid" and "21k."

d. Victim A.S.'s full name is included in this list, as well, along with the notation "paid." There is also the email address a[…]s[…]2020@gmail.com in this entry which is similar to, but not the same as, the email address provided to EDD in the EDD application in victim A.S.'s name.[7]

_____

[7] The full email address contains A.S.'s full name, so I have abbreviated it herein.

25.   Based on my review of defendants BROWN's and BARLEY's phones, I know that defendants BROWN and BARLEY shared with one another versions of this list:

a.   On or about September 1, 2020, defendant BROWN texted defendant BARLEY a screenshot of a portion of this list and said: "All ours are delivered."

b.   On or about September 6, 2020, defendant BROWN sent defendant BARLEY via text message a video file scrolling through this list.

c.   On or about December 15, 2020, defendant BARLEY sent a text message to a phone number saved in his phone as "Datboi22Zayy."  Based on my knowledge of this investigation, I believe "Datboi22Zayy" is an alias of defendant BROWN.  In this text message, defendant BARLEY sent defendant BROWN a text message containing an image of the list of victims.  Defendant BARLEY sent this text to defendant BROWN over two months after defendant BROWN had been stopped by CHP and a CHP officer had found 10 EDD debit cards in defendant BROWN's Lamborghini, as discussed below.

d.   Based on my comparison between the lists sent between defendants BROWN and BARLEY on September 6 and December 15, 2020, I have identified some differences in formatting that indicate to me, based on my training and experience, that this was list being modified over time.

**C.    October 28, 2022: Defendant BROWN Is Stopped in a White Lamborghini and Is Found with Ten EDD Debit Cards in Victims' Names**

26.    On October 28, 2020, a CHP officer conducted a traffic stop of the Lamborghini driven by defendant BROWN for speeding. Defendant BROWN provided the CHP officer with an Ohio driver's license, a California identification card, and the rental agreement for the Lamborghini.  A records check revealed defendant BROWN's Ohio driver's license was expired, and he did not have a valid driver's license in California.  The CHP officer determined BROWN was driving without a license and proceeded to impound the Lamborghini.

27.    Because the CHP officer was impounding the Lamborghini, he conducted an inventory search of its contents. As he was doing so, defendant BROWN stated to the CHP officer he had a pistol in a Louis Vuitton bag located in the back seat of the car.  The CHP officer found the Louis Vuitton bag and searched it.  The officer found a loaded pistol (later determined to be register to defendant BROWN) and $56,840 in cash in the bag.  He also found, in a side pocket, ten EDD debit cards, one Navy Federal Credit Union debit card, and one black Visa debit card, each with a different name embossed on it, none of which were in defendant BROWN's name.  When asked, defendant BROWN stated the pistol and the cash belonged to him but not the cards.  Defendant BROWN further stated he did not know any of the names embossed on the BOA cards.

28.    Among the ten EDD debit cards were cards in the names of victims C.G. and P.G.

## V.   <u>CONCLUSION</u>

29.   For all the reasons described above, there is probable cause to believe that defendants BROWN and BARLEY have committed a violation of Title 18 U.S.C. § 1349 (conspiracy to commit bank fraud).


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone this __22nd__ day of June
2023.

_____
HONORABLE BRIANNA MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

25